KATE SUSLENSKY, Respondent, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

Supreme Court, Appellate Term, First Department, June 18, 1943.

*David R. Crow* for appellant.

*Louis L. Friedman* and *Benjamin Weinstein* for respondent.

SHIENTAG, J. This is an appeal from an order granting summary judgment in favor of the plaintiff, the beneficiary of an insurance policy on the life of her husband, for double indemnity, because of his death by accidental means.

The decedent, sixty-three years old, died March 14, 1940, as the result of a poison, muriatic acid, taken by him. That is conceded. The dispute is whether the poison was taken by mistake or inadvertence or whether the defendant committed suicide. The company paid $2,000, the face amount of the policy, but refused to pay the double " Accidental Death Benefit." Action therefor was commenced on December 2, 1940. In consequence

of various stipulations, an amended complaint was served on October 27, 1942, and issue finally joined on November 24, 1942. The motion for summary judgment was made returnable on January 25, 1943. Summary judgment was granted by the court below on the ground that the defendant, in its answering affidavit, failed to raise any triable issue of fact.

The plaintiff claims that her husband, while at work early on the morning of March 14, 1940, drank from a bottle which he thought contained cider but which in fact was filled with muriatic acid, a poison. He was taken to the hospital and died early the same afternoon. The hospital records recite as the diagnosis — accidental poisoning. The certificate of the medical examiner likewise recites the cause of death as accidental poisoning and contains the statement of the decedent's son giving a history of poison taken by mistake.

The plaintiff in her moving affidavit sets forth in some detail facts known to her, tending very strongly to indicate that the death of her husband, the insured, was not due to suicide, that there was no motive for suicide but that the taking of the poison was a mishap due entirely to mistake. The opposing affidavit sets up no facts in opposition to the motion. It does not even recite that the defendant has no knowledge of the facts. It merely analyzes the plaintiff's affidavit and the documentary evidence attached thereto and concludes that '' from the plaintiff's moving affidavit itself and her own conclusive admission of facts at issue, it appears that the requirements of rule 113 of the Rules of Civil Practice have not been and cannot be satisfied. The plaintiff in her affidavit has failed to sustain the burden of showing that the answer of the defendant is a sham and was interposed solely for the purpose of delay and should be stricken out.''

In other words, the situation is just as though no opposing affidavit at all had been submitted, the defendant relying on the proposition that the plaintiff's affidavit showed that she was not entitled to the remedy of summary judgment.

We believe that the contention of the defendant is sound. Shortly after rule 113 was adopted in this State, the broad principle was announced by CARDOZO, J., following the English authorities, that '' The remedy is to be administered in furtherance of justice.'' (*Curry* v. *Mackenzie,* 239 N. Y. 267, 272.) Since the rule was aimed against defenses that were feigned and not genuine, it followed that a defendant's genuine lack of knowledge of the facts constituting the plaintiff's claim was ground for denying the motion. If this were not so, summary judgment

would be a perversion of justice rather than a remedy in furtherance thereof. So it has been held in many cases that if the facts on which the application for summary judgment is based are exclusively within the knowledge of the moving party, or clearly not within the knowledge of the opponent, the relief requested will be denied. (*Rogan* v. *Consolidated Coppermines Co.*, 117 Misc. 718, 727; *Connor* v. *Commercial Travelers, M. A. Assn. of Amer.*, 247 App. Div. 352; *Kass* v. *Equitable Life Assur. Soc.*, 257 App. Div. 931; *Karpas* v. *Bandler,* 218 App. Div. 418, 421.) Of course it must appear that the lack of knowledge by the opposing party is genuine. If the facts are matters of public record or are otherwise fully available to the opposing party, his plea of lack of knowledge would be without force.

It is because of the application of the foregoing principle that summary judgment is rarely granted in actions on policies of insurance. Almost always in such cases the facts are not within the knowledge of the defendant, who is therefore entitled to have the plaintiff's claim submitted to the test of cross-examination. The better practice, even in such cases, is for the defendant to submit in proper form what knowledge he has on the subject, or to set forth his lack of knowledge. But the nature of the case may be such that the very facts set forth in the moving affidavit itself demonstrate that a trial rather than a summary judgment is appropriate.

In this case the vital question was the state of decedent's mind when he drank the contents of the bottle containing the poison. This is not the case of a prescription written or compounded by a third party, by mistake or otherwise, containing a poisonous ingredient, taken by another with resulting death. No act of any third party, so far as the papers show, intervened. The insurance company cannot know or be expected to know what was running through the decedent's mind at the time he drank the contents of the bottle of poison. To quote an expression used by Lord Bowen which has become a classic in the law, "The state of a man's mind is as much a fact as the state of his digestion." (*Edington* v. *Fitzmaurice,* L. R. [1885] 29 Ch. Div. 459, 483.) The only way the insurance company has of determining the state of mind of the decedent is to develop his conduct and his expressions prior to the occurrence, and the details of what took place, all as tending to show motive for, or intent to commit, suicide. This it can only do by means of a trial with opportunity for examination and cross-examination of witnesses, including relatives and associates of the deceased

— a difficult task to be sure, but by no means an impossible one. The insurance company being, under the very circumstances of the case, deprived of the opportunity to have knowledge of the state of mind of the decedent, is not obliged to accept the plaintiff's version of the occurrence.

It is urged, however, that the law lays down a strong presumption against suicide. (*Bolger* v. *Prudential Ins. Co.*, 250 App. Div. 122.) That presumption, on a trial, may be and often is the determining factor; but the presumption is one capable of being rebutted. The existence of the presumption is no ground for denial of the right to a trial, for saying that there is in truth nothing to be tried.

Judgment and order reversed, with costs, and motion denied.

McLaughlin, J., concurs with Shientag, J.; Hecht, J., dissents, in opinion.

Hecht, J. (dissenting). The only issue raised by the pleadings is whether the death of the insured was accidental, as claimed by plaintiff, or suicidal, as claimed by defendant.

Plaintiff's affidavit in support of the motion, after reciting facts bearing upon the deceased's good health, lack of financial worries and happy home life to negative a motive for suicide, sets forth the details of his death as follows: " On the date of the accident, he went to work as usual, early in the morning. At about eight o'clock in the morning he returned, telling me that he drank something which he thought was cider, but which was burning him up. An ambulance was immediately called from the Morrisania Hospital and Dr. Jellinek, who responded with the ambulance, was told by my husband that he had taken the substance accidentally. My husband told me where to find the bottle and I brought it over to the doctor, who looked at it, and then immediately rushed him to the hospital. He died at 1:20 p. m. the same day.''

Plaintiff annexed as part of her moving papers copies of the autopsy report of the Assistant Medical Examiner of Bronx County and the chemical analysis of the contents of the deceased's stomach, establishing that death was caused by the drinking of a poison, hydrochloric (muriatic) acid.

The affidavit submitted by defendant in opposition to the motion is made by its general counsel, who states that his opinion is " derived from the company's files.'' He recites the following statements which appear in plaintiff's affidavit: " The only parts of the complaint which are not admitted by the defendant are that the death of the insured was caused by poison and that the death was an accident. This is the issue before

the court"; and further: "The only question is whether the drinking of the poison was accidental or suicidal."

He claims that these statements constitute an admission on the part of plaintiff that triable issues exist and that, therefore, summary judgment cannot be granted.

Defendant obviously fails to differentiate between issues raised by the pleadings and triable issues indicated by the affidavits submitted on the motion for summary judgment. Defendant's affidavit raised no triable issues. It does not claim that it lacks information but takes the position on this appeal (p. 5, appellant's brief) that it "will have to show suicide on the trial after plaintiff puts in a *prima facie* case by evidence accessible to the plaintiff. A needless exposure of such evidence on this motion might cause it to disappear. There is no need now for defendant's showing proof of suicide in the face of the admitted triable issues on this motion." Briefly stated, plaintiff has established that the deceased met his death by drinking poison (a violent and extraordinary means of death); that there existed no motive for suicide. This plus the presumption against suicide established a *prima facie* case for plaintiff not rebutted by any proof submitted by defendant on the motion.

Upon this showing can we say that the court below erred in granting plaintiff's motion solely because the action is brought on an insurance contract? I think not. I can readily understand, as Mr. Justice SHIENTAG points out, that in many actions instituted on insurance policies it might appear that defendant had no knowledge of facts which were exclusively within the knowledge of plaintiff and that under such circumstances summary judgment would quite properly be denied. This, however, is not the case here. I quite agree that defendant cannot be expected to know what was running through decedent's mind when he drank the contents of the bottle of poison, but I cannot perceive what aid may be expected from the cross-examination of plaintiff on this subject. Defendant has not indicated what efforts it made to disprove plaintiff's claim that the deceased had no business worries, was in good health and happily married. These are matters capable of ascertainment by inquiry made among the business associates and friends and neighbors of the deceased. Defendant's plight is caused by its mistaken belief that issues raised by the pleadings can be relied upon to defeat a motion for summary judgment in an action on an insurance contract and justify its refusal to disclose evidence in its possession.

The judgment and order granting plaintiff's motion for summary judgment should be affirmed.