Harwyn Publishing Corporation, Respondent, v. Great American Insurance Company, Defendant and Third-Party Plaintiff-Appellant. Bud Norton Associates, Inc., et al., Third-Party Defendants-Respondents.

First Department, March 14, 1961.

*Henry J. Robinson, Jr.,* of counsel (*Kelly & Donovan,* attorneys), for appellant.

*Irving L. Gartenberg* of counsel (*Jerome J. Sussman* with him on the brief; *Gartenberg & Ellenoff,* attorneys), for respondent.

BASTOW, J. The order appealed from grants plaintiff's motion for summary judgment and directs a jury trial of the amount of damages for which judgment should be entered. Plaintiff is a book publisher. In 1958 it produced a picture encyclopedia for children. Group Promotions, Inc., was employed to compose the text material and Bud Norton Associates, Inc., was similarly employed to do the art work. In connection with the latter some 2,100 pen and ink drawings on individual boards, each approximately 14 by 18 inches, were prepared.

Upon completion of publication the art work remained for several months in the possession of Group Promotions, Inc. On November 13, 1958 defendant or its predecessor, issued to plaintiff a policy in the amount of $100,000 against " all risks of physical loss or damage to the property " except as therein excluded. Subsequently, and following inspection by defendant,

the coverage was reduced to $75,000. There was incorporated in the policy a so-called "processing endorsement" extending coverage to the property while temporarily detained on the premises of processors for the purpose of performing work on the property for the account of the assured. This indorsement specifically stated that the property was located at Group Promotions at a stated number on 56th Street in Manhattan.

In 1959 plaintiff undertook to revise the encyclopedia and had the art work transferred by Brinks, Inc., a nationally known security risk delivery service, from the premises of Group Promotions on 56th Street to Bud Norton Associates, Inc., on Lexington Avenue in Manhattan. Before doing so plaintiff obtained from defendant an indorsement effective July 21, 1959 amending the policy and specifically naming Bud Norton Associates, 480 Lexington Avenue as a processor with the same limit of liability. Thereafter, and in late July, 1959, between a Friday afternoon and Monday morning all of the art work disappeared from the premises of Bud Norton Associates.

This action was commenced to recover the amount of plaintiff's loss under the terms of the policy. Defendant answered and served a third-party complaint on Bud Norton Associates, Inc., alleging negligence on the part of the latter and seeking indemnity as subrogee under the policy. Plaintiff, pursuant to demand, has served a detailed bill of particulars. Each party has examined the other at length before trial.

The policy, as has been stated, insured against all risks of physical loss with stated exclusions. Here pertinent is a provision exempting defendant from liability if the loss was caused by "infidelity, conversion or any act of a dishonest character" on the part of the insured or its employees, any processor or its employees, or of any party to whom the property was delivered or entrusted. Upon this motion defendant has shown no facts sufficient to establish a triable issue as to this defense. It contends in substance that the facts as presented by plaintiff are "so incredible and the theft of this type of property by anyone not connected with the plaintiff was so purposeless that, in themselves, these matters raise issues of fact".

The defendant misses entirely the posture of the parties at the time of the loss. For more than a year the insured property had been out of plaintiff's possession. For 11 months it had been with one processor and for a short time with Bud Norton Associates, another processor. The risk of loss while the property was in the possession of strangers was presumably one of the reasons plaintiff desired protection. It carefully sought and obtained indorsements from defendant extending

coverage to the two named processors while the property was in their respective possessions. Defendant inspected the property and reduced the amount of the coverage.

*Suslensky* v. *Metropolitan Life Ins. Co.* (180 Misc. 624, affd. 267 App. Div. 812) relied on by appellant, is distinguishable. There the issue presented was whether the death of insured as the result of a poison taken by him was accidental or with suicidal intent. The facts, of course, were within the possession of the beneficiary. This principle has been frequently stated. Thus, in *Newman* v. *Newark Fire Ins. Co.* (281 App. Div. 852) it was said: "In our opinion the facts as to the loss or theft of the insured articles are exclusively within the knowledge of the moving party, since appellant has only hearsay knowledge thereof, derived from statements made by respondent herself. In such a case summary judgment should not be granted, and respondent should be required to prove her case by common-law proof, subject to cross-examination." (See, also, *Verity* v. *Peoples State Bank of Baldwin,* 1 A D 2d 833.)

Here, however, the plaintiff is as much a stranger to the circumstances surrounding the loss as is the defendant. It has produced the facts in its possession. The appellant has produced nothing to substantiate its defense that the loss was caused by "infidelity, conversion or any act of a dishonest character". It simply asserts that the claim of a loss is incredible because, it argues, the property had no apparent marketable value. This is insufficient. If, as defendant suggests, the processor, who had possession of the property, "still owed $6,000 to the various artists who had worked  *  *  * on the first encyclopedia" this together with all other relevant evidence may be produced upon the trial of the third-party complaint of defendant against that processor.

Defendant further confuses the issue by its extended contentions "that in order to accomplish this theft, the thief probably would have had to do" 12 specific acts, including forcible entry of the building, entry of the offices of the processor, removal of the 2,100 boards by the use of a truck on a week end in mid-Manhattan and so forth. The short answer is that we are not concerned with that kind of a loss. The policy issued by defendant was not designed to indemnify against loss occasioned by the felonious abstraction of property from the interior of a specific building or part thereof. If appellant had extended only such coverage the burden would have been placed on plaintiff of proving a loss under circumstances which not only supported an inference of theft but pointed strongly and persuasively to the conclusion that a theft was committed. (*Wolf*

v. *Ætna Acc. & Liab. Co.*, 183 App. Div. 409, 411, affd. 228 N. Y. 524.) (See, generally, 1 Richards, Insurance [5th ed.], § 28.)

We are here considering, however, an inland marine policy which by indorsement gave coverage to plaintiff " for all risks of physical loss or damage to the property [with stated exceptions] " while " temporarily detained " by processors. The Insurance Law (§ 46, subd. 20, par. [a]) describes " marine insurance " as including " all personal property floater risks ". (Cf. *Davis Yarn Co.* v. *Brooklyn Yarn Dye Co.*, 293 N. Y. 236, 248; *Stecker* v. *American Home Fire Assur. Co.*, 299 N. Y. 1.) In the latter decision the court said (p. 6) that " there was nothing ' marine ' about this policy or the risk insured against, as men ordinarily use the word ' marine '. It was, in insurance men's language, a ' dry ', not a ' wet ', risk. It was, essentially, the same kind of policy a householder buys to cover his wife's furs or jewelry on a vacation trip, by land, from one part of the United States to another."

" The All-Risk policy is in terms a promise to pay upon the fortuitous and extraneous happening of loss or damage to a specified thing or person from any cause whatsoever. This type of contract has been said to cover every conceivable loss or damage that may happen, except when occasioned by the wilful or fraudulent act or acts of the insured." (2 Richards, Insurance [5th ed.], § 212.) Here there is not a scintilla of evidence that the loss was occasioned by the willful or fraudulent act of the insured. Neither is there any proof that the loss was caused by infidelity, conversion or an act of dishonest character on the part of insured or processor or any employee of either within the meaning of the exclusion clause of the policy. Assuming that the insured upon a trial is required to establish that the action was not barred by this exclusion provision (cf. *Sagorsky* v. *Malyon,* 4 A D 2d 1016), it is difficult to understand what proof could be offered beyond that now found in the moving papers. The defendant, as has been stated, views the loss as suspicious and contends that inasmuch as it was not a party to the transaction or happening there should be a trial. The short answer again is that neither was plaintiff a party to the transaction or happening. Whatever occurred to the property took place while it was in the hands of a third party. Appellant insured against the risk of loss from any cause during such possession. No proof has been suggested from which it could be found that a triable issue exists.

The order should be affirmed, with costs.

BOTEIN, P. J. (dissenting). I agree with the holding in the majority opinion that defendant has not presented a triable

issue in substantiation of its defense that the loss was caused by the infidelity of Bud Norton Associates, Inc., plaintiff's processor. "Infidelity", in the sense the word is used in the policy, connotes a breach of the faithful conduct owed by Norton to plaintiff. To accomplish the act of infidelity under the policy, as asserted by defendant, Norton would have had to perpetrate the theft without the knowledge and compliance of plaintiff. This would have been as inexplicable as a theft by a stranger, in view of the fact that the art work was virtually worthless in any hands — including Norton's — other than those of plaintiff. And certainly it could reasonably be inferred that anyone taking the pains to plan and consummate such an elaborate week-end removal of 2,100 art boards would know that they were valueless. Without a scintilla of other evidence, the mysterious circumstances investing the disappearance of the art work cannot possibly support an inference that it was removed by Norton without the knowledge of plaintiff.

Conversely, the utter lack of any sensible, reasonable purpose in Norton or a stranger stealing the art work does not operate to exculpate plaintiff, the only party that could profit by the loss. In view of the disadvantage that the insurance company labors under to establish such a defense upon papers alone, the issues should be thoroughly ventilated upon trial. Weak as this defense may appear at this stage of the litigation, it cannot be held as a matter of law that a jury may not draw the inference of plaintiff's involvement from the circumstances surrounding the removal of the property.

I would reverse and deny plaintiff's motion for summary judgment.

STEVENS, J. (dissenting). I would reverse the order and deny the plaintiff's motion for summary judgment. The action seeks to recover $75,000 which constitutes the limit of liability under an insurance policy for the mysterious disappearance of property specially insured against such a risk. The answer consisted of a general denial and six affirmative defenses, the most important of which alleges that the loss was specifically excluded since it resulted from the infidelity, conversion, or a dishonest act of the assured or its agents.

Plaintiff corporation is the publisher of a picture encyclopedia for children. In connection with its publication a set of 2,108 original hand-drawn black ink sketches were produced on illustration boards, measuring 14 by 18 inches, by two processors, Bud Norton Associates, Inc., and Group Promotions, Inc. Apparently each of these processors was a one-man organiza-

tion which would subcontract the art work. The sketches were originally insured for $125,000, later reduced to $75,000 at the request of the defendant. November 13, 1958 a new policy was issued on the property for $75,000. An indorsement on the policy permitted the property to remain at the office of Group Promotions, Inc., and the property remained there for 11 months after the publication of the encyclopedia. No extraordinary precautions were taken to safeguard the allegedly valuable pictures at that location. Plaintiff states that in June, 1959 it decided to revise the format of the publication. In connection therewith plaintiff notified the defendant of its intention to transfer the property to Bud Norton Associates, Inc. A written indorsement was issued on the policy effective July 21, 1959, specifically naming Bud Norton Associates, Inc., as a processor with the limit of liability on the property at its premises in the same sum of $75,000. July 23, 1959, a Brinks, Inc., truck removed the art work from Group Promotions and delivered it to Bud Norton Associates, Inc., at suite 602, 480 Lexington Avenue, Manhattan. Plaintiff claims that sometime between 7:00 P.M. on Friday, July 24, and 10:00 A.M. Monday, July 27, 1959, and on or about July 26, 1959 the property was stolen from the Norton premises. Plaintiff notified the defendant. The defendant disclaimed liability and this action was instituted.

In cases involving insurance claims " if the facts on which the application for summary judgment is based are exclusively within the knowledge of the moving party, or clearly not within the knowledge of the opponent " the application will be denied. (*Suslensky* v. *Metropolitan Life Ins. Co.*, 180 Misc. 624, 626 [App. Term, 1st Dept., 1943], affd. 267 App. Div. 812.) The rule is designed to prevent the perpetration of frauds upon companies who insure property exclusively within the control of an insured, which by its very nature is free from any external supervision. Such property is easily susceptible to willful loss or destruction. For that reason summary judgment is rarely granted in such cases when a loss allegedly occurs. In furtherance of this policy this court recently held that not only must the insured establish that the loss was covered by the terms of the policy but also that recovery is not barred by the exclusion provisions of the contract. (*Sagorsky* v. *Malyon,* 4 A D 2d 1016.)

Admittedly the defendant has had the benefit of extensive pretrial disclosure and investigation. The facts elicited raise sufficient issues as to whether recovery for the loss is excluded by the conditions of the contract. In a case of this nature plaintiff should be put to its proof at a trial.

The processor states that the property must have been stolen over the week end from its locked premises on the sixth floor of an office building located at 480 Lexington Avenue, Manhattan. There were no signs of any forcible entry. The property in question consisted of over 2,000 pages wrapped in 73 packages. Such a theft could hardly have been accomplished without the use of a truck or vehicle. Despite this, the alleged theft was accomplished without attracting the attention of the building watchman, elevator operator or other personnel. It was conceded that the property was valueless to anyone else. The pictures were copyrighted, and anyone who desired a set could have easily obtained them by purchasing the encyclopedia for $11.49. Thus, there is no apparent motive for the theft. Plaintiff states that the sketches were shipped to Bud Norton Associates, Inc., for the purpose of reprocessing them into a revised edition. The fact is that the first four volumes of the revised edition were completed in August of 1959, less than a month after the property was turned over for reprocessing. Bud Norton Associates, Inc., also stated that at the time of the loss there was little work to be done at its office. Plaintiff was aware that Bud Norton Associates, Inc., still owed $6,000 to various artists who had worked on the first edition. Indeed the plaintiff and its processor are codefendants in a lawsuit brought by one of these artists.

In light of the foregoing, sharp issues of credibility are presented. There is also a triable issue as to whether recovery is not barred by the exclusion provisions of the contract, and plaintiff should be put to its proof upon a trial.

The order should be reversed and summary judgment denied.

BREITEL and VALENTE, JJ., concur with BASTOW, J.; BOTEIN, P. J., and STEVENS, J., dissent in separate opinions.

Order entered on September 13, 1960, granting plaintiff's motion for summary judgment and directing an assessment of damages, affirmed, with $20 costs and disbursements to the plaintiff-respondent.