G. Edelstein & Co., Inc., Respondent, v Ambassador Insurance Company, Appellant.

First Department, April 1, 1982

### APPEARANCES OF COUNSEL

*Howard S. Davis* for appellant.

*Martin J. Hertz* of counsel (*Barbara N. Herzog* with him on the brief; *Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* attorneys), for respondent.

FEIN, J.

Defendant issued an insurance policy to plaintiff on November 6, 1978, which insured against general liability and included special coverage for mercantile open stock burglary and mercantile robbery. The robbery indorsement insured against loss up to $50,000; the burglary indorsement insured against loss up $30,000. The indorsements did not rely upon the Penal Law definitions of the crimes of robbery and burglary, but contained their own definitions.

Plaintiff conducted a pawnbroker business at 428 East 149th Street, Bronx. On the morning of September 29, 1979 plaintiff suffered a loss during which the president and an employee of plaintiff were assaulted and robbed, the safe vault on the premises was opened, and jewelry, cash and other items were removed. Plaintiff described the incident in its answers to interrogatories 6 and 7 (A), as follows: "At approximately 8:30 a.m. on September 29, 1979, three individuals, having entered plaintiff's premises by forcing open the locked door at 428 East 149th Street, Bronx, New York, drew hand guns and announced that they were holding-up the plaintiff, pointed these guns in the direction of all persons located inside plaintiff's premises, warned all such persons not to say or do anything and announced their intention to take property located at plaintiff's premises, took Mr. Edelstein's wallet and keys to the vault by force, took his glasses and broke them, handcuffed him, blindfolded him, handcuffed him to a pipe in the basement, presumably used his keys to open the vault door, dumped out drawers from the vault and took jewelry out of the vault."

Elsewhere in answers to interrogatories plaintiff alleges that, in addition to removing jewelry from the vault, the thieves took jewelry from showcases and a display on the main floor, and cash from a cash drawer and from the person of plaintiff's president.

The complaint, in a single cause of action, seeks recovery for these losses under both indorsements.

█ The issue is whether the events described entitle the plaintiff to recovery under either indorsement or under both. On defendant's motion to dismiss the complaint for failure to serve proper answers to interrogatories, plaintiff cross-moved for partial summary judgment in the sum of $50,000 pursuant to the mercantile robbery indorsement, or in the alternative, in the amount of $30,000 pursuant to the mercantile open stock burglary indorsement. Special Term found that plaintiff's answers to the interrogatories were sufficient. We agree.

Special Term held that there was no real factual dispute that there was an occurrence at plaintiff's premises which resulted in a loss covered by the policy. We agree. The affidavits, the examination by defendant of plaintiff's president and the answers to interrogatories, taken together, establish a prima facie case that thieves came into plaintiff's establishment, held up its employees, and stole cash, jewelry and similar items. Defendant's attorney's allegations, suggesting in conclusory fashion that no such incident occurred, are insufficient to defeat a motion for summary judgment. Whatever defendant's suspicions, they are insufficient to preclude summary judgment in the absence of some sworn statement or other evidence sufficient to raise factual issues as to whether the incident occurred or the losses were sustained. It is the obligation of a party opposing a motion for summary judgment to lay bare his proof so that the court may have an opportunity to determine whether there is, in truth, an actual dispute about the facts (*Di Sabato v Soffes,* 9 AD2d 297). No such showing has been made by this defendant. The affidavits, testimony and other evidence on behalf of plaintiff are sufficient.

The dissent suggests that there is no independent evidence in the record to confirm that a robbery and/or burglary took place. No weight is given to the facts that (1) plaintiff's president's deposition was taken and transcribed into a 71-page transcript; (2) a 31-page list of items stolen accompanied plaintiff's proof of loss; and (3) plaintiff also prepared and submitted a 57-page list containing the names and addresses of pledgors, items pledged, receipt ticket numbers, and amount of money loaned for each item stolen, together with a list of items of jewelry owned by

plaintiff which were in the store for sale. Contrary to defendant's contention, these lists and the interrogatories also stated where in the store the items were located, whether in a safe or display or showcase.

Moreover, it is undisputed that the incident was reported to the police and that the police were furnished with an inventory list, a copy of which was provided to defendant. In addition, plaintiff's books and records were audited by defendant's accountants over a period of several days.

In the face of this proof there is only an attorney's affidavit in opposition, replete with speculation and legal argument but no facts. There is no factual support for the speculation in the dissent respecting the possible dishonest involvement in the incident of those persons who were employed by plaintiff at the time of the occurrence in September, 1979 but who were no longer so employed at the time of plaintiff's president's deposition in August, 1980.

On the face of the record as it now stands, there is no real dispute that at least $30,000 worth of jewelry was taken, as Special Term concluded. Special Term, accordingly, granted plaintiff's motion for partial summary judgment in the sum of $30,000, holding that "[N]o evidence is submitted to rebut plaintiff's prima facie showing that thieves came into its establishment and held up its employees. There appears also to be no real dispute as to the fact that at least $30,000 worth of jewelry was taken. Accordingly, it would seem that the entire amount due upon the burglary portion should be paid. This is so, regardless of whether plaintiff is successful at trial in establishing that a robbery also occurred within the meaning of the terms of the policy." Special Term severed for trial the remainder of plaintiff's claim.

We agree that plaintiff has established that at least $30,000 worth of jewelry was taken. However, plaintiff has not established at this juncture that there was a burglary within the meaning of the policy, authorizing recovery under that indorsement. In our view, plaintiff was entitled to partial summary judgment under the robbery indorsement.

The terms "robbery" and "burglary" are defined in the policy as follows:

" 'Robbery' means the taking of insured property (1) by violence inflicted upon a messenger or a custodian; (2) by putting him in fear of violence; (3) by any other overt felonious act committed in his presence and of which he was actually cognizant, provided such other act is not committed by an officer, partner or employee of the insured; (4) from the person or direct care and custody of a messenger or custodian who has been killed or rendered unconscious; or (5) under Coverage A, (a) from within the premises by means of compelling a messenger or custodian by violence or threat of violence while outside the premises to admit a person into the premises or to furnish him with means of ingress into the premises, or (b) from a showcase or show window within the premises while regularly open for business, by a person who has broken the glass thereof from outside the premises."

" 'Safe burglary' means (1) the felonious abstraction of insured property from within a vault or safe described in the declarations and located within the premises by a person making felonious entry into such vault or such safe and any vault containing the safe, when all doors thereof are duly closed and locked by all combination locks thereon, provided such entry shall be made by actual force and violence, of which force and violence there are visable [*sic*] marks made by tools, explosives, electricity or chemicals upon the exterior of (a) all of said doors of such vault or such safe and any vault containing the safe, if entry is made through such doors, or (b) the top, bottom or walls of such vault or such safe and any vault containing the safe through which entry is made, if not made through such doors, or (2) the felonious abstraction of such safe from within the premises."

The robbery indorsement plainly covers all of the property taken, whether or not it was in the safe or vault. As noted, the policy defines "robbery" as the taking of insured property from a messenger or custodian by violence or fear of violence, or by any other felonious act cognizably committed in his presence by someone not affiliated with the insured.

On this record it appears that three individuals forced open the locked door of plaintiff's premises, entered same with drawn hand guns and announced they were holding up the plaintiff. They pointed these guns in the direction of all persons present, took a wallet and keys from the president's person by force, broke his glasses, handcuffed him to a pipe in the basement and blindfolded him. They then used his keys to open the vault door, dumped out drawers from the vault and took jewelry from the vault. They also took jewelry and other items from showcases and display cases as well as cash from a cash drawer and from the person of plaintiff's president. A clearer case of robbery within the meaning of the policy could hardly be made out. There was force and violence, putting the custodian in fear, and with use of guns the intruders took jewelry and other items.

For reasons which do not appear, Special Term concluded that this was burglary. Within the meaning of the Penal Law, it was probably robbery and burglary, but we here construe not the Penal Law but the terms of the policy. The safe burglary indorsement to the policy covers property taken by a person who feloniously enters a locked vault or safe by force and violence, leaving "visible marks made by tools, explosives, electricity or chemicals" used in aid thereof.

There is no apparent evidence on this record of "visible marks made by tools, explosives, electricity or chemicals". Accordingly, there is a question whether plaintiff is entitled to recover under the burglary indorsement, which issue is best left for trial.

As noted, Special Term granted plaintiff partial summary judgment in the sum of $30,000 on the burglary indorsement. Although we have concluded that plaintiff was not entitled to recover on the burglary indorsement, this does not preclude us from affirming the judgment for $30,000 upon the ground that plaintiff has plainly established a loss of at least $30,000 by reason of the robbery. There is no merit to defendant's contention that recovery by the plaintiff on the robbery indorsement is precluded unless and until the plaintiff establishes which items are subject to the burglary indorsement. True enough, with

respect to the burglary indorsement, plaintiff will have to establish (1) that the event complained of constituted a burglary and (2) that the property for which recovery is sought was in a safe or vault, since only such property is covered by the burglary indorsement.

There is no merit to defendant's contention that plaintiff cannot succeed on this motion because of its failure or inability to distinguish, with respect to the loss, between what events constituted the robbery and what property was taken pursuant thereto, and what events constituted the burglary and what property was taken pursuant thereto. Plainly, the events complained of in their entirety, and the property taken, are covered by the express language of the robbery indorsement.

On the face of the papers, Special Term should have granted plaintiff's motion for partial summary judgment in the sum of $50,000 on the robbery indorsement, as requested. The record amply supports such an award. However, plaintiff did not appeal and, accordingly, it is not proper for us to increase the amount awarded by Special Term.

■ There is no merit to defendant's contention that plaintiff is not entitled to recover because in an independent action brought by a pledgor against the plaintiff, the complaint of the pledgor was dismissed for failure to show that the present plaintiff, as pledgee, was negligent in causing the loss occasioned by the robbery. Despite such judgment, plaintiff has lost the balance due on the loans made to the respective pledgors. The theft of the subjects of the pledge destroyed plaintiff's equity interest in the pledged items.

■ There remains for consideration the question whether partial summary judgment should be granted where the balance of the case remains for trial. Obviously, upon such a trial the plaintiff will be required to prove the total loss sustained by it and then deduct the $30,000 required to be paid by our judgment. The dissent suggests that we are required to specify which items are covered by the judgment we award. We see no need to do so. Upon the trial, plaintiff will necessarily be required to specify all the

items subject to the loss. The location has already been provided in the lists and inventory furnished. No reasons of economy of judicial time or of the litigants' time should be relied upon to aid this defendant in delaying recovery on its plain contract.

Accordingly, the order appealed from, Supreme Court, New York County (SHAINSWIT, J.), entered March 3, 1981, and the judgment entered thereon, March 25, 1981, should be affirmed, together with costs.

MURPHY, P. J. (dissenting). Upon its cross motion, plaintiff sought to recover $83,000 under the subject policy for a robbery and/or burglary which allegedly occurred in its premises on September 29, 1979. Summary judgment is rarely granted on policies of insurance where the insured is in exclusive knowledge of the facts. The insurer is generally entitled to examine the witnesses to the particular occurrence and to test the insured's claim at trial through cross-examination. (*Suslensky v Metropolitan Life Ins. Co.*, 180 Misc 624, affd 267 App Div 812; 6 Carmody-Wait 2d, NY Prac, § 39:30, pp 479-480). Therefore a motion for summary judgment on a policy for the theft or unexplained loss of jewelry is normally denied on the ground that the matter should be resolved at trial (*Brookov, Inc. v Glens Falls Ins. Co.*, 190 Misc 792).

Plaintiff's president, Perry Edelstein, has submitted an affidavit in this proceeding in which he describes the robbery by three unknown individuals. Before the commencement of this action, he was also deposed by the defendant's attorney. The defendant insurer is not required to accept, without challenge, the version of events given by Perry and his employees. It should be emphasized that there is no independent evidence in the record to confirm that a robbery and/or burglary took place.

Moreover, Perry's account of the occurrence raises questions, the answers to which might preclude any recovery by the plaintiff. At his deposition, Perry stated that, to the best of his knowledge, the front door to the pawnshop was locked when the three individuals entered. He could not explain how the three individuals were able to gain entry through the locked door. On January 27, 1980, this pawn-

shop was again robbed of items worth $100,000 by three unknown individuals. When Perry's deposition was held in August of 1980, three employees, who had been present at the September, 1979 occurrence, were no longer in plaintiff's employ. No reason was given for the termination and/or resignation of the three former employees. These facts raise the possibility that a dishonest employee might have aided the individuals involved in these occurrences. Under this policy, coverage would be excluded if a dishonest employee acted in collusion with others in causing the robbery and/or burglary. The insurer should be permitted to explore this possibility both before and at trial.

Upon Perry's description of events in his deposition, it is very doubtful that any burglary occurred. It should be emphasized that under the "safe burglary" provision, the plaintiff is only entitled to recover if the vault door was closed. Perry conceded that the vault door was open at the time the three individuals entered. The gate inside the vault was apparently opened with Perry's keys. Consequently this occurrence could not possibly be classified as a "safe burglary" and that branch of the action should be dismissed before trial.

If partial summary judgment in the sum of $30,000 is to be awarded on the robbery branch of the action, then the majority should specify which items are being covered by the award. A specification as to the items covered by the award and the location of those items at the time of the occurrence may prove important if a further assessment is had in this case. If the plaintiff is eventually permitted recovery under the "safe burglary" provision, it must demonstrate that the items were taken from the vault and not from the showcase. To prevent any confusion and duplication of award at a later stage in this proceeding, the majority should specify the $30,000 of personalty covered and its location at the time of the loss.

While it is very doubtful that plaintiff will be able to recover for both the robbery and the burglary, the fact remains that it has chosen to prosecute this action on both theories. Therefore, in answering the interrogatories, it should have specified the acts constituting the robbery and those constituting the burglary. It should have also speci-

fied the items taken under each theory of recovery. The combined answers given by the plaintiff only tend to strengthen defendant's contention that a determination of events must be made by a trier of fact. The defendant's motion should have been granted only to the extent of directing plaintiff to serve appropriate answers to interrogatories 1, 2, 3, 6 and 7 so as to conform with its own dual theories in this case.

Accordingly, the judgment of the Supreme Court, New York County (SHAINSWIT, J.), entered March 25, 1981, awarding the plaintiff partial summary judgment in the sum of $32,675, should be reversed, on the law, and the plaintiff's motion for partial summary judgment should be denied. The order of the Supreme Court, New York County (SHAINSWIT, J.), entered March 3, 1981, which, *inter alia,* denied the defendant's motion to strike the complaint, should be modified, on the law, by granting defendant's motion to the extent of directing further answers to interrogatories 1, 2, 3, 6 and 7, and as modified, it should be affirmed.

KUPFERMAN, MARKEWICH and LYNCH, JJ., concur with FEIN, J.; MURPHY, P. J., dissents in an opinion.

Order, Supreme Court, New York County, entered on March 3, 1981, and judgment of said court entered thereon on March 25, 1981, affirmed. Respondent shall recover of appellant one bill of $75 costs and disbursements of these appeals.